[File No. 6653.]

ELDA J. WILLIAMS, Respondent, v. MARK F. WILLIAMS, Appellant.

(293 N. W. 802.)

Opinion filed July 30, 1940.   Rehearing denied September 17, 1940.

*Lynn & Chesrown* and *Hyland & Foster,* for appellant.
*Charles Coventry* and *Van Slyke & Agor,* for respondent.

BURKE, J.   In this case judgment of divorce was entered in the district court of Emmons county, in favor of the plaintiff, and against the defendant.   By the terms of the decree the plaintiff was granted the custody of the two children of the plaintiff and the defendant, aged seven years and four years respectively, alimony and support money in the sum of $150 per month and attorneys' fees in the sum of $100. The decree also required the defendant to continue in force an insurance policy upon the life of his son, upon which the annual premium is $118.10 and a savings certificate which he had secured for the benefit of his daughter upon which the required annual deposit is $171.

The defendant has appealed from the judgment and has demanded a trial de novo in this court.   The propriety of the decree of the district court in its award to the plaintiff of a divorce and the custody of the children is not challenged.   We therefore do not consider it necessary to recount at length the evidence relating to those matters.   We have examined that evidence and find that it amply sustains that part of the judgment.   Defendant most vigorously asserts, however, that the allowances made by the trial court for alimony, support and suit fees are excessive.

The plaintiff and defendant were married in 1924.   At that time both were schoolteachers.   After marriage the defendant attended Medical College.   During the time the defendant was in college the plaintiff worked and contributed a part of her earnings to assist the defendant in the pursuit of his studies.   Defendant began the practice of medicine in Chicago in 1932 and in 1933, he moved to Hettinger, N. D., where he practiced until the spring of 1938.   During all of this time plaintiff and defendant lived together.   Their first child was born

in Chicago in 1931, and their second child in Hettinger in 1934. At Hettinger defendant's income was sufficient to support his family comfortably and upon the standard of a professional man in that community. On March 1, 1938, defendant moved to Linton, N. D., leaving the plaintiff and their children at Hettinger. At Linton he purchased the office equipment and car of a physician who was leaving to take up his practice elsewhere. He also purchased a hospital and the hospital furniture and fixtures. For the office equipment he agreed to pay $2,150, for the car $200 and for the hospital $14,050. He paid the full purchase price of the car. He paid $700 upon the office equipment and agreed to pay the balance of $1,450 in monthly installments. He assumed a mortgage for the full purchase price of the hospital and upon this indebtedness agreed to pay $100 per month and interest upon the unpaid balance at the rate of 2 per cent per annum.

At the time defendant entered into these transactions he had definitely made up his mind to live apart from his wife and children. On April 20, 1938, he wrote to the plaintiff stating: "I had thought it was understood you would not be coming to Linton, and as I had said before it would be up to you to decide where you wished to live apart from me." In June, 1938, at the close of the school year, plaintiff and the children moved to Aberdeen, S. D. Before moving she submitted to the defendant a budget plan which she testified was based upon the standard of living they had maintained in Hettinger. This budget plan called for an expenditure of $171 per month. After receiving the plan the defendant wrote to the plaintiff under date of May 1, 1938, "Your outlined budget is entirely satisfactory as far as I am concerned. I do not expect you to get along on any less than what you have had, at least while I maintain my health and activity. I expect to maintain all the insurance I now have on myself and the children. So with the $2,100 as your annual budget and about $800 that I pay on insurance I will have to make almost $3,000 a year before I have anything for myself." After the plaintiff had established herself and the children at Aberdeen, the defendant paid her an agreed amount of $175 a month for four or five months but was paying her only $150 per month at the time this action was commenced.

Defendant's gross income for the year 1938 was $12,693.60. This is shown by defendant's sworn statement of receipts and disbursements

which was filed in the case and which was before the court at the time of the trial. The statement discloses that defendant made the required payments upon his purchases of hospital, hospital and office equipment and car, that he paid all of his business expense, including the cost of operating the hospital, that he paid his medical society dues and his expenses to medical meetings, that he made contributions of $204, that he paid to or for his wife and children $2,055, that he paid upon his personal life insurance $368 and upon his insurance for the children $300, and that after making all these payments there remained a balance of $475. The evidence also shows that defendant lived at the hospital and that his personal living expenses for board, room, laundry, telephone, and automobile are included in his business and hospital operating cost. Defendant is in good health and thirty-five years old. The plaintiff has no separate property or income. She is not in good health and her physician has ordered her to do no heavy work.

Section 4405, Compiled Laws of North Dakota 1913, reads as follows: "When divorce is granted, the court shall make such equitable distribution of the property of the parties thereto as may seem just and proper and may compel either of such parties to provide for the maintenance of the children of the marriage, and make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects." Circumstances which are proper considerations in the determination of a "suitable allowance" include the needs of the wife and her dependents in the light of the standard of living maintained by the parties while living together (19 C. J. 250), the health of the wife and other circumstances affecting her ability to contribute to her own support (19 C. J. 259), the relative fault of the parties (29 C. J. 256, 259), and the income of the husband (19 C. J. 254).

We have no hesitancy whatever in stating that the sum which has been allowed to the wife is reasonably necessary for her support and that of the children. The allowance is less than that which the husband, in April, 1938, conceded to be proper. It is certainly no more than enough to enable her to maintain a home, to give the young children the care and supervision they will need and to permit her to participate

to a small extent in the social and church activities to which she had become accustomed while she and her husband were living together.

Nor is the allowance excessive in the light of the evidence of the husband's ability to pay. This action was tried May 10, 1939. There was proof of the husband's 1938 income but no proof of his income for the first four months of 1939. Upon the basis of his 1938 income he could pay the $2,089.10, required by the judgment in this case for alimony, support money, and insurance premiums, make his payments upon his purchases of hospital and equipment, have his board, room, laundry, heat, light, telephone, automobile expense, medical association dues, medical meeting expense, money for contributions and still have approximately $1,000 left over for such other personal needs as he might have. Certainly in these circumstances, the payment of the required amounts would cause him no undue hardship. There was testimony, however, that the husband's income from January 1, 1939, until the time of the trial had fallen below that of the corresponding period in 1938. This testimony is very general and indefinite as to amounts, but it must have been considered by the trial court because the annual payments required by the judgment for support and insurance are $634 less than the payments for those purposes, voluntarily made by the husband in 1938.

At the time this case was argued upon appeal the defendant filed an affidavit in this court purporting to show his income to January 1, 1940. The argument based upon this affidavit was in effect a petition to modify the decree because of a subsequent change in the circumstances of the parties. Such a petition should first have been addressed to the trial court. In matters of this kind this court has appellate jurisdiction only. N. D. Const. § 86. The judgment of the trial court is therefore affirmed.

NUESSLE, Ch. J., and BURR, MORRIS, and CHRISTIANSON, JJ., concur.

BURKE, J. (on petition for rehearing). The defendant has filed a petition for rehearing calling our attention to the trial court's finding of fact that his net income for 1938 was only $2,800, and asserting that out of this amount, it is obviously impossible for him to pay his

wife and children $1,800 a year, make payments of $1,200 a year upon his hospital purchase contract, make his payments on his purchase of equipment, pay his taxes, insurance premiums and other expenses including his own living expenses.

The trial court's finding as to net income was evidently made upon the following testimony of the defendant:

Ques. "Do you recall what your net income for 1938 was Doctor?"

Ans. "Well it was just over $2,600 in cash. . . . Of course, seein's how I lived at the hospital I had to take and add to that cash income $200 allowance for my living expenses there for ten months. . . ."

Ques. "In other words, you figure your net income for 1938, as being something over $2,800, is that right?"

Ans. "Yes."

The defendant did not state what he meant by net income, but it is clear from the record that he did not intend the meaning he would have us give to the words upon our consideration of this petition.

The defendant moved to Linton, March 1, 1938. The trial of this case commenced May 10, 1939, or some fourteen months later. At the trial he testified he had made payments upon his purchase of the hospital of $123.50 each month, during 1938 he had paid over $600 in insurance premiums, that from March 1, 1938, until May 10, 1939, he had paid to his wife for her support and the support of the children $175 a month half of the months, $160 for one month and $150 a month the balance of the time, that he had paid his current taxes, that he had made payments in unstated amounts to his mother upon his indebtedness to her, monthly payments upon his purchase of equipment, a payment of $200 on the purchase of a car and in addition had paid the operating expenses of his business and his own living expenses. The defendant had no previous accumulations out of which to make these payments and in fact had borrowed $700 from his mother to make the down payment on his purchase of office and hospital equipment.

Figuring defendant's payments to his wife during the period in question at an average of $160 a month, his payments on insurance at $55 a month, these payments alone would amount to $2,580 a year. It is thus perfectly clear that defendant considered all expenditures for

capital investment and all payments upon loans, including both principal and interest as items of expense and properly deductible from gross revenue in determining net income. The defendant may not determine net income in such a manner and then be heard to say that expenditures which have been deducted in determining net income must be paid out of net income.

A rehearing is denied.

NUESSLE, Ch. J., and BURR, MORRIS, and CHRISTIANSON, JJ., concur.